(17 Misc. Rep. 317.)

WILLIAMS v. WILSON.[1]

(City Court of New York, General Term.    June 30, 1896.)

RELEASE—EVIDENCE.
    Plaintiff in an action for wrongful discharge from defendant's service testified that he went to see defendant after the discharge, and told him

[1] Reversed.  40 N. Y. Supp. 1133.

that he had no money and nothing to eat; that defendant's manager came into the room, and said, "Let him sign first before you give him the money;" that he (plaintiff) did not know what was on the paper which was offered for his signature; that he did not understand English; that the paper was not read or explained to him; that defendant showed him some money, but would not give it to him until he signed; and that he thought he was signing a receipt for the money then paid. *Held*, that the evidence was sufficient to sustain a finding that such paper, which was a release of plaintiff's cause of action, was obtained by fraud.

Appeal from trial term.

Action by Herman Williams against Francis Wilson to recover damages for the wrongful discharge of plaintiff from defendant's employment. Judgment entered on a verdict in favor of plaintiff for the full amount claimed, and from an order denying a motion for a new trial defendant appeals. Affirmed.

Argued before VAN WYCK, C. J., and CONLAN and O'DWYER, JJ.

Hyde & Leonard, for appellant.
Fromme Bros., for respondent.

VAN WYCK, C. J. The plaintiff's alleged cause is for damages for a wrongful discharge by defendant, who, by express contract, had employed plaintiff as a chorus singer for a specific term of 35 weeks. The answer denies this, and alleges that the employment was for an indefinite term, and that there was an express agreement that it could be terminated by two weeks' notice; and, further, that there was a prevailing custom that such contracts of employment could be terminated upon such two weeks' notice, and that such notice had been given, and that plaintiff was "incompetent, unfit, and unable" to perform; and, finally, pleaded a general release executed by plaintiff after commencement of action. In pleading all of his defenses the defendant must have anticipated that plaintiff would at trial endeavor to avoid the release. There is no certificate that the printed case contains all the evidence given upon the trial, so that only questions of law are properly up for review; and if there is proof, no matter how slight, sufficient to justify the submission of the disputed questions of fact to the jury, their verdict will not be disturbed on appeal. Aldridge v. Aldridge, 120 N. Y. 614, 24 N. E. 1022. The defendant made no motion for a nonsuit or for a dismissal on the merits at the close of the case. However, after the judge had charged the jury, and passed upon his and his adversary's requests, the defendant requested the direction of a verdict in his favor upon the evidence. The judge charged the jury "that the release is a perfect defense, unless there is evidence to show that it was obtained by fraud or deceit." The appellant does not complain of the rule thus laid down, but contends that there was no evidence of any active fraud by him. However, the fraud of the defendant may have been purely passive. An intentional concealment by the defendant of the purport of the instrument, or an omission to inform plaintiff of his mistake, if he perceived that he was in error as to its provisions, would be sufficient to avoid the release. The plaintiff testified in regard to the con-

versations and circumstances at the time that he was paid $36 by defendant, and the release was signed as follows:

"I saw him [defendant] that time in his dressing room. He was in the office alone there. I say: 'Mr. Wilson, I have not got anything to eat since five days. I haven't got any money. Everything is in the pawn shop. I am in a very poor condition.' And Mr. Wilson said, 'Well, my dear, I can't give you any more now.' 'Well,' I say, 'I am hungry. I must get something to eat;' and he was ringing the bell, and there came his manager, I think, Mr. Fais,—I don't remember the name,—and he said, 'Mr. Wilson, let him sign first, before you give him the money,' and then he brought some paper for me to sign my name. I don't know what was on the paper. I don't understand it. I sing in Italian and French language, and in English language, but I don't understand it,—what it means, the words what is written; so I thought I signed for the $36 what I received from Mr. Wilson. I did not know what I signed. I was sick. I hadn't got anything to eat, and I don't know what I did. The paper was not read or explained to me; nothing, only I would write it before I got the money. He showed me the money, but don't give it to me first before I signed it. I did not know what I was signing. I know nothing. I couldn't see nothing. I haven't got my eyeglasses. I was under the impression that I was signing a receipt for $36. Nobody told me about a general release. I know nothing about it. I did not think I was signing for the whole claim, only the $36 what I have received from Mr. Wilson, that I could get something to eat."

This evidence stands uncontradicted by the defendant or his manager. Neither testified on the trial, and no witness at all was called by the defendant, who, however, had marked in evidence the release, and then rested. The testimony of the plaintiff as to the passive fraud of defendant in obtaining the release, although not very strong, is sufficient to have justified the jury in finding that the defendant was conscious at the time that plaintiff did and could not know that he was signing a general release, and that by failing to inform plaintiff of its nature he had been guilty of an intentional concealment of the purport of the instrument. The jury so found by returning a verdict for plaintiff for the full amount of his claim, less this $36 and a previous payment.

The appellant further complains that the plaintiff's attorney was improperly allowed to prove that he had a lien upon plaintiff's cause of action, notwithstanding that the release was executed after action commenced. The attorney made proof of the extent of his lien and of notice thereof to defendant before alleged settlement, but he had not previously obtained an order of the court to enforce his lien. The action was on trial, and the plaintiff himself sought to avoid the release because of fraud or mistake. If he succeeded in such effort, the lien of his attorney attached to the verdict; but, if he failed, the lien was lost to the attorney. It was proper to try the claims of the plaintiff and of his attorney at the same time, for then the defeat of plaintiff would not deprive the attorney of his rights. However, if it was error to allow the attorney to make effort to establish his lien as against defendant, such error was cured by the verdict for the full amount of plaintiff's claim, for the jury have not determined whether the attorney had any lien or not, and were not called upon to determine that question unless they had first decided that the plaintiff himself was estopped by his release. Another contention of appellant is that he should have

been allowed to withdraw a juror upon his counsel's mere statement to the court that defendant was not then within the state, and that such counsel was surprised by plaintiff's assault upon the release, and that he "had not the faintest anticipation of any such evidence." The counsel did not submit any affidavit as to defendant's absence. If counsel had not the faintest anticipation that plaintiff would endeavor to avoid the estoppel of the release, why did he set forth in the answer, verified by defendant nearly two years ago, three distinct defenses other than the estoppel by release: First, that the employment was by the week; second, if for the season, then that custom allowed its termination by two weeks' notice, which was given; and, third, that plaintiff was incompetent and unfit to properly perform his agreed services, and for such cause was discharged by defendant? What suggested these defenses to counsel, if it was not his anticipation that he would be met at trial by an assault upon the release?

The judgment and order affirmed, with costs. All concur.